1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

JONATHAN STUDEN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

FUNKO, INC., ANDREW PERLMUTTER, and JENNIFER FALL JUNG,

Defendants.

Case No.: 2:23-cv-00824

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**DEMAND FOR JURY TRIAL**

Plaintiff, Jonathan Studen ("Studen" or "Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes, without limitation, review and analysis of: (a) public filings made by Funko, Inc. ("Funko" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) press releases, shareholder communications, postings on Funko's investor relations website, and other public statements disseminated by Defendants (as defined below); (c) news articles and analyst reports concerning Funko; and (d)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

other publicly available information concerning Funko and the Individual Defendants (as defined below).

## **NATURE OF THE ACTION**

1.      This is a federal securities class action alleging claims against Funko and certain of its officers and directors (collectively "Defendants") for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, on behalf of a "Class" of all persons who purchased or otherwise acquired Funko common stock on a U.S. open market during the class period May 6, 2022 through March 1, 2023, both dates inclusive (the "Class Period"). Excluded from the Class are Defendants in this action, the officers and directors of the Company during the Class Period (the "Excluded D&Os"), members of Defendants' and Excluded D&Os' immediate families, legal representatives, heirs, successors or assigns, and any entity in which Defendants or the Excluded D&Os have or had a controlling interest.

2.      Funko is a pop culture consumer products company that creates vinyl figures, action toys, plush, accessories, apparel, and homewares relating to movies, TV shows, video games, musicians, and sports teams. Funko purports to be the world's largest seller of pop culture collectibles, and is best known for its Pop! line of vinyl collectible figures, which account for over three-quarters of the Company's sales.

3.      During the Class Period, Defendants promoted both the planned move of Funko's distribution center from Everett, Washington to Buckeye, Arizona as well as the planned upgrade of the Company's enterprise resource planning (ERP) software system. Defendants repeatedly spoke of the necessity for these upgrades to serve current and future business needs.

CLASS ACTION COMPLAINT - 2
Case No.: 2:23-cv-00824

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

4.      However, these statements were materially false and misleading, or failed to disclose material information necessary to make these statements not misleading, in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

5.      The successful implementation of these two initiatives, involving complex systems and processes, was critical to Funko's ability to accurately forecast consumer demand for its products and to efficiently operate Funko's distribution center.

6.      As Defendants have now admitted, the move to Funko's distribution center, accompanied by the delay in implementation of the ERP rollout, was disastrous, resulting in substantially increased selling, general, and administrative expenses ("SG&A") and dramatically lower profit margins.

7.      On November 3, 2022, after the market closed, Funko announced its 3Q 2022 results in which Funko's earnings per diluted share was $0.28 per share, more than 42% below Street estimates of $0.49 per share.

8.      That same day, Funko also dramatically lowered its FY 2022 guidance. Funko lowered its Net Sales from $1.30 billion - $1.35 billion to $1.29 billion - $1.33 billion, its Adjusted Net Income from $101.8 million - $107.3 million to $47 million - $49 million, and its Adjusted Earnings per Diluted Share from $1.88 - $1.99 per share to $0.85 - $0.95 per share. Funko also cut its projected FY 2022 Adjusted EBITDA margin to high single digits, compared to prior estimates of 14.6%.

9.      In response to this news, on November 4, 2022, Funko's stock price fell $11.58 per share to $7.92 or a 59.4% drop on very heavy volume.

10.     The other shoe had not yet dropped for Funko investors however.

CLASS ACTION COMPLAINT - 3
Case No.: 2:23-cv-00824

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

11.     On March 1, 2023, after the market closed, Funko announced its FY 2022 results and guidance for FY 2023. While Funko did manage to hit the low end of its Net Sales guidance, the Company saw Net Income for FY 2022 decrease to a $5.2 million loss, its Adjusted EBITDA margin decreased to 7.4% and its Adjusted Earnings per Diluted Share came in well below prior estimates at $0.57 per share.

12.     In response to this news, in after-hours trading on March 1, 2023, Funko's stock price fell $3.17 per share from closing at $10.70 per share to $7.53 per share or a 29.6% drop. Funko's stock recovered somewhat during intra-day trading, but still closed down at $9.94 per share on very heavy volume.

13.     As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's common stock when the truth was disclosed, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this action is a civil action arising under the laws of the United States, and under Section 27 of the Exchange Act (15 U.S.C. § 78aa), which vests exclusive jurisdiction for violations of the Exchange Act in the District Courts of the United States.

16.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) for the following reasons:

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

a)      Many of the acts and omissions charged herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in substantial part in this Judicial District;

b)      The Company's principal executive offices are located in this Judicial District.

17.     In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

18.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Funko common stock during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

19.     Defendant Funko is incorporated under the laws of Delaware with its principal executive offices located in Everett, Washington. Funko's shares trade on the NASDAQ exchange under the ticker symbol "FNKO."

20.     Defendant Andrew Perlmutter ("Perlmutter") has served as Funko's President since December 2022, prior to which, he served as Chief Executive Officer **("CEO")** from January 2022 through December 5, 2022 and as a member of the Funko, Inc. board of directors since January, 2022.

21.     Perlmutter signed certifications pursuant to 17 C.F.R. § 240.13(A)-14(A) that were attached to Funko's 2022 Q2 10-Q and 2022 Q3 10-Q as Exhibit 31.1, and certifications pursuant

CLASS ACTION COMPLAINT - 5
Case No.: 2:23-cv-00824

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

to Section 906 of the Sarbanes-Oxley Act of 2022 (18 U.S.C. § 1350) that were attached to Funko's 2022 Q2 10-Q and 2022 Q3 10-Q as Exhibit 32.1, which are alleged to contain materially false and misleading statements or omit material information in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

22.     Defendant Jennifer Fall Jung ("Jung") served as the Chief Financial Officer ("CFO") of Funko from August 13, 2019 through December 5, 2022.

23.     Jung signed certifications pursuant to 17 C.F.R. § 240.13(A)-14(A) that were attached to Funko's 2022 Q2 10-Q and 2022 Q3 10-Q as Exhibit 31.2 and certifications pursuant to Section 906 of the Sarbanes-Oxley Act of 2022 (18 U.S.C. § 1350) that were attached to Funko's 2022 Q2 10-Q and 2022 Q3 10-Q as Exhibit 32.2, which are alleged to contain materially false and misleading statements or omit material information in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

24.     Defendants Perlmutter and Jung (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.

25.     The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.

26.     Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations that

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

27.     The Company and the Individual Defendants are collectively referred to as the "Defendants."

## FACTUAL ALLEGATIONS

**Background**

28.     Funko is a pop culture consumer products company that creates vinyl figures, action toys, plush, accessories, apparel, and homewares relating to movies, TV shows, video games, musicians, and sports teams. Funko purports to be the world's largest seller of pop culture collectibles, and is best known for its Pop! line of vinyl collectible figures, which account for over three-quarters of the Company's sales.

29.     The Company was founded in 1998 and is headquartered in Everett, Washington.

30.     Funko sells its products through general retailers such as Target and Walmart as well as through specialty retailers, e-commerce sites such as Amazon.com and directly to consumers.

31.     In 2005, Funko's current CEO Brian Mariotti and a small group of investors acquired Funko. Funko went through several corporate changes in the ensuing years. Mariotti significantly expanded the Company's licensing deals. In 2011, Funko began selling what is now its best-known product, the Pop! line of vinyl collectible figures.

32.     Funko ultimately went public in November 2017.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

33.     Funko's IPO was disastrous, with shares plunging the first day 41.1% from the $12 per share initial public offering price. News reports at the time called it the "the worst first-day return for an IPO in 17 years."[1]

34.     After Funko's IPO, shareholders filed securities class actions against, *inter alia*, Defendant Funko. Those matters are still pending, with an appellate court partially reversing the dismissal of the state court complaint in 2021, the federal case stayed, and a global mediation that was scheduled to occur on May 16, 2023. *See Lowinger v. Funko, Inc. et al*, No. 17-2-29838-7 SEA (King. Cty. Sup. Ct. Complaint filed Nov. 16, 2017); *Berkelhammer v. Funko, Inc. et al,* No. 2:18-cv-00812 (W.D. Wash. Complaint filed June 4, 2018).[2]

35.     On May 5, 2022, an investment consortium led by The Chernin Group announced that they were acquiring 12,520,559 shares of Funko's common stock from ACON (a large Funko shareholder) at $21 per share. After that transaction closed, The Chernin Group consortium owned 25% of Funko.[3] The litigation stemming from the Company's IPO did not mark the last time that Funko was embroiled in securities litigation. In 2020, Defendants Funko, Jung, and Perlmutter were all sued for alleged securities fraud.[4] That litigation alleged that Funko had such significant amounts of obsolete excess inventory that Funko ran out of warehouse space and had to lease third party warehouse space in Washington to store it. The excess inventory was allegedly caused

---

[1] *Funko stock plunges in 'worst first-day return for an IPO in 17 years'*, Seattle Times, available at https://www.seattletimes.com/business/funko-stock-plunges-in-ipo-shocker/ (last visited 4/12/23).
[2] As of the filing of this Complaint, no further activity is listed on the dockets for either the state or federal case. It is thus unclear if the mediation actually occurred and what the results, if any, were.
[3] *See* https://www.prnewswire.com/news-releases/the-chernin-group-led-consortium-to-acquire-263-million-in-funko-a-leading-pop-culture-lifestyle-brand-301541298.html (last visited 4/12/23).
[4] *See Gilberto Ferreira, et al. v. Funko, Inc., et al.*, 2:20-cv-02319-VAP-MAAx (C.D. Cal. Complaint filed March 10, 2020).

by Funko's inability to accurately forecast sales. The 2020 securities class action settled in 2022 for $7 million.

**Defendants' Materially False and Misleading Statements**

36.     During the Class Period, Defendants made materially false and misleading statements and failed to disclose material information about both the status and costs of the planned move of Funko's distribution center from Everett, Washington to Buckeye, Arizona as well as the planned upgrade of the Company's ERP software system.

37.     The Class Period begins on May 6, 2022, to coincide with the Company's announcement of its first quarter 2022 financial results. After the market closed on May 5, 2022 Funko filed with the SEC its quarterly report on Form 10-Q for the First Quarter of 2022 (the "2022 Q1 10-Q") and held an earnings call with analysts (the "May 5, 2022 Earnings Call").

38.     Funko's 2022 Q1 10-Q stated:

We rely extensively on various information technology systems and software applications, including our enterprise resource planning software, to manage many aspects of our business, including product development, management of our supply chain, sale and delivery of our products, financial reporting and various other processes and transactions. We are critically dependent on the integrity, security and consistent operations of these systems and related back-up systems…. The efficient operation and successful growth of our business depends on these information systems, including our ability to operate and upgrade them effectively and to select and implement adequate disaster recovery systems successfully….   We are also in process of upgrading our enterprise resource planning software globally, beginning in the United States.[5]

39.     Funko's 2022 Q1 10-Q further stated:

To manage domestic and international growth of our operations and personnel, we have invested in the development of a new enterprise resource planning system, additional platforms to support our direct-to-consumer experience, and capital build out of new leased warehouse and office spaces. We will need to continue to improve our product

---

[5] 2022 Q1 10-Q at 57.

CLASS ACTION COMPLAINT - 9
Case No.: 2:23-cv-00824

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

development, supply chain, financial and management controls and our reporting processes and procedures to support our infrastructure and new business initiatives. [6]

40.     Attached as Exhibits 31.1 and 31.2 to the 2022 Q1 10-Q were certifications pursuant to 17 C.F.R. 240.13(A)-14(A) signed by Defendants Perlmutter and Jung, respectively, which stated:

1. I have reviewed this Quarterly Report on Form 10-Q of Funko, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the company's internal control over financial reporting that occurred during the period covered by the annual report that has materially

---

[6] 2022 Q1 10-Q at 39.

CLASS ACTION COMPLAINT - 10
Case No.: 2:23-cv-00824

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

affected, or is reasonably likely to materially affect, the company's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting.

41.     Attached as Exhibits 32.1 and 32.2 to the 2022 Q1 10-Q were further certifications pursuant to Section 906 of the Sarbanes-Oxley Act of 2022 signed by Defendants Perlmutter and Jung, respectively, which stated:

(1) The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

42.     During the May 5, 2022 earnings call, Defendant Perlmutter attributed Funko's strong results to:

three primary factors: exceptional consumer demand, a portfolio comprised of compelling industry-leading brands and focused execution by the entire team. Our excellent first quarter performance gives us even greater confidence in the business going forward. As a result, we are raising our full year revenue and earning targets.

43.     Further on the May 5, 2022 earnings call, Defendant Perlmutter stated that:

In summary, Q1 was an excellent start to the year. We delivered strong financial results and are raising our outlook for 2022. Across the portfolio, our brands are exciting and engaging our fans in a uniquely Funko way. Demand has never been stronger. And while we continue to operate in a constrained environment through multiple global factors, **we are effectively managing through these disruptions and exceeding our expectations**.

We are confident in our ability to achieve our new fiscal 2022 target of revenue between $1.275 billion and $1.325 billion and adjusted earnings per share of $1.80 to $1.90. We

CLASS ACTION COMPLAINT - 11
Case No.: 2:23-cv-00824

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

believe these same factors plus our focus on sustainable, long-term growth **will enable us to deliver a 3-year growth objective, up double-digit revenue growth over the next 3 years with consistent margin expansion.** [Emphasis added.]

44.     On the May 5, 2022 Earnings Call, in response to a question about Funko's distribution center relocation and ERP system implementation, Defendant Jung commented that Funko "did launch the new DC [Distribution Center] in April, and the ERP is set to come out at the end of the [second] quarter." In response to a follow up question from that same analyst, as to whether Funko's DC and ERP implementations would be completed before the end of the second quarter, Defendant Jung emphasized that the projects would be complete before the end of the second quarter, commenting that "the pressure's all in the first half of the year, specifically Q2."

45.     The statements in the 2022 Q1 10-Q and the attached certifications as well as in the May 5, 2022 earnings call in paragraphs ¶¶38-43 were untrue statements of material facts or failed to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, because:

        a)      Funko was experiencing significantly larger delays in implementing its ERP software than it was disclosing to investors;

        b)      Having moved into a new warehouse without functioning ERP software in place would lead to dramatically higher costs and poorer inventory management practices; and

        c)      Funko's inability to efficiently operate the new distribution center would have a substantial, undisclosed impact on the Company's EBITDA margin.

46.     On August 4, 2022, after the markets closed, Funko filed the 2022 Q2 10-Q with the SEC. The 2022 Q2 10-Q was signed by Defendant Jung.

47.     Funko's 2022 Q2 10-Q stated:

CLASS ACTION COMPLAINT - 12
Case No.: 2:23-cv-00824

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

To manage domestic and international growth of our operations and personnel, we have invested in the development of a new enterprise resource planning system, additional platforms to support our direct-to-consumer experience, and capital build out of new leased warehouse and office spaces. We will need to continue to improve our product development, supply chain, financial and management controls and our reporting processes and procedures to support our infrastructure and new business initiatives. [7]

48.     The 2022 Q2 10-Q further stated that:

We rely extensively on various information technology systems and software applications, including our enterprise resource planning software, to manage many aspects of our business, including product development, management of our supply chain, sale and delivery of our products, financial reporting and various other processes and transactions. We are critically dependent on the integrity, security and consistent operations of these systems and related back-up systems….The efficient operation and successful growth of our business depends on these information systems, including our ability to operate and upgrade them effectively and to select and implement adequate disaster recovery systems successfully…We are also in process of upgrading our enterprise resource planning software globally, beginning in the United States. In August 2022, we announced that we are delaying the remaining steps for implementation of our enterprise resource planning software to 2023. If the potential upgrades are not successful or result in further delays, our business could be disrupted or harmed.[8]

49.     Attached as Exhibits 31.1 and 31.2 to the 2022 Q2 10-Q were certifications pursuant to 17 C.F.R. 240.13(A)-14(A) signed by Defendants Perlmutter and Jung, respectively, which stated:

1. I have reviewed this Quarterly Report on Form 10-Q of Funko, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-

---

[7] 2022 Q2 10-Q at 46.
[8] *Id.* at 64.

CLASS ACTION COMPLAINT - 13
Case No.: 2:23-cv-00824

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the company's internal control over financial reporting that occurred during the period covered by the annual report that has materially affected, or is reasonably likely to materially affect, the company's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting.

50.     Attached as Exhibits 32.1 and 32.2 to the 2022 Q2 10-Q were further certifications pursuant to Section 906 of the Sarbanes-Oxley Act of 2022 signed by Defendants Perlmutter and Jung, respectively, which stated:

(1) The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

(2) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

51.     That same day, August 4, 2022, after the markets closed, Funko held an earnings call with analysts (the "August 4 Earnings Call"). On that call, Defendant Jung stated that Funko had "recently made the difficult decision to delay the remaining [ERP implementation] steps until 2023," noting that Defendants "did not want to impair the momentum that we have today by shifting to a platform that we felt wasn't yet fully ready to support our business."

52.     Also on the August 4 Earnings Call, Defendant Jung stated that Funko had "an adjusted EBITDA margin of 10%" for Q2 2022, remained "on track to deliver full year adjusted EBITDA margins consistent with 2021 results," of 14.6% and that while "inventory levels are up year-over-year, we believe that inventory is generally high quality and leave us well positioned to meet our consumer demand and support our strong second half growth forecast."

53.     During the August 4 Earnings Call, an analyst posed a question to Defendant Jung:

Linda Ann Bolton-Weiser - D.A. Davidson & Co., Research Division - MD & Senior Research Analyst

And also on the cost side, you've talked about pushing out this ERP initiative into 2023. Does that mean there's going to be less associated SG&A costs associated with that in 2022?

Jennifer Fall Jung - Funko, Inc. - CFO

No, and that's actually a great question. There'll be puts and takes about 2022. We will still continue to work on these initiatives throughout the year. So the run rate will continue. But there's other offsetting factors to that. **So we don't see it as a major headwind in 2022 so far, but we feel good we made the right decision for the business to not have business interruption as we go into the holiday season**.  [Emphasis added.]

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

54.     Investors were surprised by news of the delayed ERP rollout, and in response, on August 5, 2022, Funko's stock price fell $4.88 per share to $21.81 or an 18.3% drop on heavier than normal volume.

55.     The statements in the 2022 Q2 10-Q and the attached certifications as well as in the August 4 Earnings Call in paragraphs ¶¶47-53 were untrue statements of material fact or failed to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, because:

a)      Having moved into a new warehouse without functioning ERP software in place led to dramatically higher costs and poorer inventory management practices; and

b)      Funko's inability to efficiently operate the new distribution center was having a substantial, undisclosed impact on the Company's EBITDA margin.

56.     On September 13, 2022, after the markets closed, Funko held an "Investor Day", which consisted of a scripted presentation by Funko's executives as well as a Q&A session with investors.

57.     The September 13 Investor Day was held just over two weeks before the end of Funko's 2022 third quarter, more than 80% of the way through that fiscal reporting period.

58.     In the scripted presentation, Defendant Jung stated:

**we think we're going to get to 20% adjusted EBITDA. We know we're going to get to 20% adjusted EBITDA over the course of this time**.

* * *

**And improved operating margin. So with our new DC [Distribution Center], we feel we can improve our overall operating cost and leverage by streamlining our logistics.** As we continue to build our house of brands, there should be organizational leverage as we move towards really kind of bringing all those brands into our house and making sure that we're kind of streamlining our business operations, and our ERP will be instrumental in this.  [Emphasis added.]

59.     Defendant Jung's comments at the September 13 Investor Day were made while a prepared slide deck was displayed to participants:[9]

## HOW TO ACHIEVE ~20% EBITDA MARGIN



**IMPROVED GROSS MARGINS THROUGH:**

- Normalized shipping and freight costs
- Channel shift toward our own DTC channel
- Price realization on new product categories



**IMPROVED OPERATING LEVERAGE THROUGH**

- Streamlined logistics within the new DC
- Organizational leverage as we move toward a house of brands
- Longer term efficiencies as we deliver on our ERP

60.     The statements at the September 13, 2022 Investor Day were untrue statements of material facts or failed to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, because:

a)      Having moved into a new warehouse without functioning ERP software in place led to dramatically higher costs and poorer inventory management practices; and

b)      Funko's inability to efficiently operate the new distribution center was having a substantial, undisclosed impact on the Company's EBITDA margin.

**The Truth Is Slowly Revealed**

61.     On November 3, 2022, after the market closed, Funko issued a press release announcing results for the third quarter of 2022.

---

[9] https://s24.q4cdn.com/627994544/files/doc_presentations/2022/09/Investor-Day-FINAL-Presentation.pdf (last visited April 13, 2022)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

62.     A copy of Funko's November 3, 2022 press release was filed by Funko with the SEC on Form 8-K on November 3, 2022.

63.     The November 3, 2022 press release announced that Funko's earnings per share had come in at $0.28 per share, more than 42% below street estimates of $0.49 per share.

64.     Moreover, the November 3, 2022 press release noted that Funko's gross margin "in the third quarter of 2022 decreased 100 basis points to 35.0% compared to 36.0% in the third quarter of 2021" and that SG&A expenses increased 63.5% to $97.9MM "due to increased infrastructure investment to accommodate recent rapid growth and provide capacity for sustained future growth."[10]

65.     Funko also dramatically cut its FY 2022 guidance, projecting "Adjusted Net Income of $47 million - $49 million," from prior estimates of $101.8 million - $107.3 million and "Adjusted Earnings per Diluted Share of $0.85 - $0.95 per share," from prior estimates of $1.88 - $1.99 per share. Funko also cut its projected FY 2022 Adjusted EBITDA margin to high single digits, from prior estimates of 14.6%.[11]

66.     That same day, November 3, 2022, Funko held an earnings call with analysts (the "November 3 Earnings Call").

67.     During the November 3 Earnings Call, Defendant Jung noted that the Buckeye, Arizona distribution center had opened "without the benefit of the warehouse management software it was designed to operate with….[S]upporting the complex upgrades to our core infrastructure has resulted in higher than expected short-term operating expenses and increased margin pressure." Defendant Jung further stated that "These higher expenses consisted primarily

[10] November 3, 2022 8-K at Exh. 99.1.
[11] Id.

CLASS ACTION COMPLAINT - 18
Case No.: 2:23-cv-00824

of higher labor costs within the facility and additional machinery to support product movement. We've also added additional third-party logistics or 3PO warehouses."

68.     In response to a question from an analyst as to how the ERP implementation delays caught the Company by surprise, Defendant Perlmutter responded that the Company had decided to launch the new warehouse without the benefit of a fully functioning or implemented ERP system:

> We made the decision to move the new warehouse with a delayed ERP. And part of that ERP is…warehouse management software thing. And basically, that helps you optimize the layout of that warehouse.
>
> And so when the ERP [was delayed], it came with the extra work around having to create manual processes to optimize that warehouse, which would normally have been done in an operating system, but unfortunately, we didn't have. So that's -- was it a surprise? I would say it caused us more manual processes than we expected. So, yes, I think that that was something that caught us a little bit off guard, but obviously we're pushing through and we're creating the manual workarounds to continue to get that revenue out of the door.

69.     In response to this news, on November 4, 2022, the price of Funko's common stock fell $11.58 per share to $7.92 or a 59.4% drop on exceptionally heavy volume of 15.197 million shares, more than twelve times the average daily trading volume of Funko's common stock.

70.     The results of Funko's rocky distribution center move and ERP implantation continued to impact the Company. On March 1, 2023, Funko issued a press release, reporting results for the fourth quarter 2022. In that release, Funko noted:

> Gross margin in the fourth quarter of 2022 decreased… **driven primarily by storage and container rental charges associated with inventory in excess of warehouse capacity**.
>
> \* \* \*
>
> SG&A expenses increased 78% to $139.2 million in the fourth quarter of 2022 compared to $78.3 million in the fourth quarter of 2021, which **includes a $32.5 million write down of capitalized costs associated with the decision not to implement a previously disclosed enterprise resource planning system**

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

* * *

Inventory at year-end totaled $246.4 million, an increase of 48% compared to a year ago. **This includes inventory that the Company intends to eliminate in the first half of 2023 to reduce fulfillment costs by managing inventory levels to align with the operating capacity of our distribution center**. This is expected to result in a write down in the first half of 2023 of approximately $30 to $36 million.[12]

71.    News stories discussing Funko's March 1, 2023 earnings release noted:

The maker of the Funko Pop! collectibles plans to toss millions of dollars' worth of its inventory, after realizing it has more of its pop culture figurines than it can afford to hold on to.

Waning demand for the pop culture vinyl toys, combined with a glut of inventory, is driving the loss as the company hits a financial rough patch.

The inventory has filled the company's warehouses to the brim, forcing Funko to rent storage containers to hold the excess product. And now, the product is worth less than it costs to keep on hand.[13]

72.    The March 1, 2023 inventory write-down announcement must have felt like déjà vu all over again to Funko investors as it mirrored Funko's alleged misstatements and omissions related to inventory practices in the securities class actions filed against Funko and the Individual Defendants in 2017, 2018, and 2020 discussed *supra*.

73.    In response to this news, on March 2, 2023, the price of Funko's common stock fell intra-day $3.17 per share to $7.53, a 29.6% drop, before recovering somewhat to close down $0.76 per share at $9.94 or a 7.1% drop on exceptionally heavy volume of 4.3 million shares, more than six times the average daily trading volume of Funko's common stock.

---

[12] March 1, 2023 8-K at Exh. 99.1 (emphasis added).
[13] *Over $30M worth of Funkos are being dumped*, NPR, available at
https://www.npr.org/2023/03/04/1161070238/funko-pop-landfill (last visited 4/12/23)

## CLASS ACTION ALLEGATIONS

74.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons who purchased or otherwise acquired Funko common stock on a U.S. open market during the class period May 5, 2022 through March 1, 2023, both dates inclusive (the "Class"). Excluded from the Class are Defendants in this action, the officers and directors of the Company during the Class Period (the Excluded D&Os), members of Defendants' and Excluded D&Os' immediate families, legal representatives, heirs, successors or assigns, and any entity in which Defendants or the Excluded D&Os have or had a controlling interest.

75.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.

76.     Throughout the Class Period, Funko's common stock actively traded on the NASDAQ (an open and efficient market) under the symbol "FNKO." Millions of shares of Funko common stock were traded publicly during the Class Period on the NASDAQ.

77.     As of February 27, 2023, the Company had 47,226,835 shares outstanding. Record owners and other members of the Class may be identified from records maintained by Funko or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

78.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

79.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests that conflict with those of the Class.

80.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a)     whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

b)     whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

c)     whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders by Defendants during the Class Period misrepresented or omitted material facts about Funko's business, operations, internal controls, and financial statements;

d)     whether the market price of Funko's common stock during the Class Period was artificially inflated and/or maintained due to the material misrepresentations or omissions and/or failures to correct the material misrepresentations or omissions complained of herein; and

e)     the extent to which the members of the Class have sustained damages and the proper measure of damages,

81.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

82.     Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

## ADDITIONAL SCIENTER ALLEGATIONS

83.     As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated by Defendants during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

84.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Funko, their control over, receipt, and/or modification of Funko's allegedly materially misleading statements and omissions, and/or their positions with the Company which made them privy to confidential information concerning Funko, participated in the fraudulent scheme alleged herein.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

85.     The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

CLASS ACTION COMPLAINT - 23
Case No.: 2:23-cv-00824

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

86.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Funko who knew that the statement was false when made.

## **LOSS CAUSATION**

87.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

88.     During the Class Period, as detailed herein, Defendants made untrue statements of material facts or failed to disclose information necessary to make the statements made by Defendants not misleading. This artificially inflated and/or maintained the prices of Funko's common stock and operated as a fraud or deceit on the Class.

89.     When Defendants' prior material false statements and material omissions, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of Funko common stock fell precipitously, as the prior artificial inflation came out of the price.

## **APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)**

90.     The market for Funko common stock was open, well-developed, and efficient at all relevant times.

91.     Funko's common stock is listed on the NASDAQ Stock Exchange and trades under the symbol "FNKO."

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

92.     As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Funko common stock traded at artificially inflated and/or maintained prices during the Class Period. Plaintiff and other members of the Class purchased the Company's common stock relying upon the integrity of the market price of Funko's common stock and market information relating to Funko and have been damaged thereby.

93.     At all times relevant, the market for Funko common stock was an efficient market for the following reasons, among others:

a)     Funko's common stock was listed and actively traded on NASDAQ, a highly efficient and automated market;

b)     As a regulated issuer, Funko filed periodic public reports with the SEC and/or the NASDAQ;

c)     Funko regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d)     Funko was followed by securities analysts employed by brokerage firms, including Bank of America, J.P. Morgan, Goldman Sachs, BMO, Jefferies, Stifel, and Truist Securities, who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

94.     As a result of the foregoing, the market for Funko's common stock promptly digested current information regarding Funko from all publicly available sources and reflected such information in the prices of the common stock. Under these circumstances, all purchasers of

CLASS ACTION COMPLAINT - 25
Case No.: 2:23-cv-00824

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Funko common stock during the Class Period suffered similar injury through their purchase of Funko common stock at artificially inflated and/or maintained prices, and a presumption of reliance applies.

95.     Therefore, Plaintiff and the Class are entitled to a presumption of reliance pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).

96.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' omissions of material facts necessary to make the statements made by Defendants not misleading, including but not limited to the fact that Funko was experiencing significant undisclosed delays in implementing its ERP software; and having moved into a new warehouse without functioning ERP software in place led to dramatically higher costs and poorer inventory management practices.

97.     Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects - information that Defendants were obligated to disclose during the Class Period but did not - positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

**CAUSES OF ACTION**

**COUNT I**
**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants**

98.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

99.     This Count is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

100.     Based upon the facts alleged herein, during the Class Period, Defendants violated Section 10(b) and Rule 10b-5 in that they, in connection with the purchase of Funko common stock by the Plaintiff and the Class, (a) used or employed manipulative and deceptive devices or contrivances in contravention of rules and regulations set forth by the SEC; (b) employed devices, schemes, and artifices to defraud; (c) made untrue statements of material facts and/or omitted to state material facts necessary to make the statements not misleading; and/or (d) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon the Plaintiff and the Class.

101.     Defendants engaged in a plan, scheme, and course of conduct, that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and/or maintain the market price of Funko common stock; and (iii) cause Plaintiff and other members of the Class to purchase Funko common stock at artificially inflated and/or maintained prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

102.    Pursuant to the above, plan, scheme, conspiracy, and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the annual reports, quarterly results announcements, SEC filings, press releases, and other statements and documents described above. Such reports, filings, releases and statements contained untrue statements of material facts of failed to disclose material information necessary to make the statements made not misleading.

103.    Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Funko's business, operations, and prospects, as specified herein.

104.    Defendants, individually and in concert, directly and indirectly, employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Funko's business, operations, and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Funko and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

105.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such

CLASS ACTION COMPLAINT - 28
Case No.: 2:23-cv-00824

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Funko's operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of Funko common stock.

106.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Funko common stock was artificially inflated and/or maintained, and relying directly or indirectly on the false and misleading statements made by Defendants or upon the integrity of the market in which the common stock trades, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class purchased Funko common stock during the Class Period at artificially inflated and/or maintained prices and were damaged thereby.

107.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known of the truth regarding the significant undisclosed delays Funko was experiencing in implementing its ERP software and the dramatically higher costs and poorer inventory management practices Funko was experiencing as a result of having moved into a new warehouse without functioning ERP software in place, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased their Funko common stock, or, if they had purchased such securities during the Class Period, they would not have done so at the artificially inflated and/or maintained prices that they paid.

CLASS ACTION COMPLAINT - 29
Case No.: 2:23-cv-00824

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

108.     By virtue of the foregoing, Funko and the Individual Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

109.     Defendants are liable both directly and indirectly for their violations of Section 10(b) and Rule 10b-5 and the wrongs complained of herein.

110.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**COUNT II**
**For Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

111.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

112.     The Individual Defendants acted as controlling persons of Funko within the meaning of Section 20(a) of the Exchange Act as alleged herein.

113.     By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

114.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by

CLASS ACTION COMPLAINT - 30
Case No.: 2:23-cv-00824

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

115.     The Individual Defendants were also responsible for creating and overseeing the implementation of Funko's ERP software and the move to the Buckeye, Arizona warehouse

116.     Further, the Individual Defendants signed the Form 10-Ks, Form 10-Qs, and certifications and authorized the filing or dissemination of the Form 10-Ks, Form 10-Qs, and press releases that are alleged herein to contain materially false and misleading statements or material omissions.

117.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

118.     As set forth above, Funko and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons of Funko, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

119.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

A.     Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

B.     Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

C.     Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

D.     Awarding such other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**DATED**:  June 2nd, 2023

**BADGLEY MULLINS TURNER PLLC**

*/s/Duncan C. Turner*
Duncan C. Turner, WSBA No. 20597
19929 Ballinger Way NE, Ste. 200
Seattle, WA 98155
Telephone:  (206) 621-6566
Email:  dturner@badgleymullins.com

**WOLF POPPER LLP**
Robert C. Finkel (*Pro Hac Vice application to be filed*)
Adam Savett (*Pro Hac Vice application to be filed*)
845 Third Avenue, 12th Floor
New York, NY 10022
Telephone: (212) 759-4600
Email: rfinkel@wolfpopper.com
Email: asavett@wolfpopper.com

***Counsel for Plaintiff***