1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  JONATHAN STUDEN,                              CASE NO. C23-0824JLR

11                              Plaintiff,          ORDER

12                  v.

13  FUNKO, INC., et al.,

14                              Defendants.

## I.   INTRODUCTION

16      Before the court are:  (1) Movant Construction Laborers Pension Trust of Greater

17  St. Louis's (the "Pension Trust") motion to appoint lead plaintiff and counsel (Pension

18  Mot. (Dkt. # 22)); (2) Movant Paul Haddock's motion to appoint lead plaintiff and

19  counsel (Haddock Mot. (Dkt. # 24)); and (3) Plaintiff Jonathan Studen's motion to

20  appoint lead plaintiff and counsel (Studen Mot. (Dkt. # 20)).  The Pension Trust opposes

21  Mr. Haddock and Mr. Studen's motions, but Mr. Haddock and Mr. Studen do not oppose

22  the Pension Trust's motion.  (Pension Resp. (Dkt. # 27); Haddock Not. (Dkt. # 28); *see*

1  *generally* Dkt.)  The court has considered the parties' submissions, the relevant portions

2  of the record, and the governing law.  Being fully advised,[1] the court GRANTS the

3  Pension Trust's motion, DENIES Mr. Studen's motion, and DENIES Mr. Haddock's

4  motion.

5  ## II.  BACKGROUND

6  This putative securities fraud class action is brought against Defendant Funko, Inc.

7  ("Funko") and two of its executive officers, Defendants Andrew Perlmutter and Jennifer

8  Fall Jung (collectively, "Defendants"), on behalf of investors who purchased or otherwise

9  acquired shares of Funko common stock between May 6, 2022, through March 1, 2023,

10  inclusive (the "Proposed Class Period").  (*See* Compl. (Dkt. # 1) ¶¶ 1, 20, 22.)  The

11  putative class members bring claims for violations of Section 10(b) and 20(a) of the

12  Securities Exchange Act of 1934 (the "1934 Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a),

13  and Rule 10b-5, 17 C.F.R. § 240.10b-5.  (*See id.* ¶¶ 98-119.)

14  Funko is a "pop culture consumer products company that creates vinyl figures,

15  action toys, plush, accessories, apparel, and homewares relating to movies, TV shows,

16  video games, musicians, and sports teams."  (*Id.* ¶ 28.)  During the Proposed Class

17  Period, the putative class alleges that Defendants made false and/or misleading

18  statements and failed to disclose material, adverse facts about Funko's business and

19  operations, including the planned move of Funko's distribution center from Everett,

20

21  _____

   [1] No one has requested oral argument (*see* Pension Mot. at 1; Studen Mot. at 1; Haddock

22  Mot. at 1; Pension Resp. at 1), and the court has determined that oral argument would not be
   helpful to its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

1    Washington to Buckeye, Arizona and the planned upgrade of Funko's enterprise resource

2    planning software system.  (*See id.* ¶¶ 3-13, 36-73.)  The putative class further alleges

3    that Defendants' false and/or misleading statements and omissions artificially inflated

4    and/or maintained the prices of Funko's common stock, and when the truth about

5    Funko's business initiatives was ultimately disclosed, "the price of Funko common stock

6    fell precipitously," causing the putative class members to suffer significant losses.  (*See*

7    *id.* ¶¶ 87-89, 92-94.)

8                              **III.   ANALYSIS**

9           The Pension Trust, Mr. Haddock, and Mr. Studen filed the instant motions to

10   appoint lead plaintiff and lead counsel on August 1, 2023.  (*See generally* Pension Mot.;

11   Studen Mot.; Haddock Mot.)  The court discusses the appointment of lead plaintiff before

12   turning to consider the appointment of lead and liaison counsel.

13   **A.    Appointment of Lead Plaintiff Under the PSLRA**

14          Under the Private Securities Litigation Reform Act ("PSLRA"), private plaintiffs

15   have twenty days from the filing of a class action securities complaint to publish a notice

16   advising putative class members of the pendency of the action, the claims asserted, the

17   purported class period, and the right of any class member to move the court to serve as

18   lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Class members have sixty days from the

19   date of publication to move the court for appointment as lead plaintiff.  *Id.*  The court

20   then considers any motion to serve as lead plaintiff made by a putative class member.  15

21   U.S.C. § 78u-4(a)(3)(B)(i).

22   //

1    The PSLRA "instructs district courts to select as lead plaintiff the one 'most

2    capable of adequately representing the interests of class members.'"  *In re Cavanaugh*,

3    306 F.3d 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)).  Under the

4    PSLRA, the presumptively most adequate plaintiff is the movant who (1) either filed the

5    complaint or timely moved to serve as lead plaintiff, (2) has the largest financial interest

6    in the relief sought by the class, and (3) meets the requirements of Federal Rule of Civil

7    Procedure 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  After the court determines the

8    presumptive lead plaintiff, other movants have "an opportunity to rebut the presumptive

9    lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements."

10   *In re Cavanaugh*, 306 F.3d at 730; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (stating that

11   another movant can rebut the presumption by proving that the presumptively lead

12   plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to

13   unique defenses that render such plaintiff incapable of adequately representing the

14   class").  "If, as a result of this process, the district court determines that the presumptive

15   lead plaintiff does not meet the typicality or adequacy requirement, it then must proceed

16   to determine whether the plaintiff with the next lower stake in the litigation has made a

17   prima facie showing of typicality and adequacy."  *In re Cavanaugh*, 306 F.3d at 731.

18        1.  <u>Timely Motion</u>

19        The court finds that this class action was properly noticed on June 2, 2023 (*see*

20   Cappio Decl. (Dkt. # 23) ¶ 2, Ex. A), and that each movant's motion to appoint lead

21   plaintiff was timely filed under the time restraints imposed by the PLSRA (*see generally*

22   Dkt.).  15 U.S.C. § 78u-4(a)(3)(A)(i).

2.  <u>Largest Financial Interest</u>

In assessing the financial interests of the movants, the district court must identify "the losses allegedly suffered by the various" movants and then "compare the financial stakes of the various [movants] and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d at 730; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  The PSLRA does not specify how to assess which movant has the "largest financial interest in the relief sought by the class," and the Ninth Circuit has left it to the district courts to "select accounting methods that are both rational and consistently applied" in making this determination.  *See In re Cavanaugh*, 306 F.3d at 730 n.4.  Courts usually consider the following four factors:  (1) total shares purchased, (2) net shares purchased, (3) net funds expended, and (4) approximate loss suffered.  *See Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1075 (W.D. Wash. 2011).  Of these four factors, "courts consider the fourth factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss."  *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (quoting *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007)); *Reinschmidt v. Zillow, Inc.*, No. C12-2084RSM, 2013 WL 1092129, at *3 (W.D. Wash. Mar. 14, 2013).  Once the court identifies the plaintiff with the largest financial interest in the litigation, the court's inquiry "must focus on that plaintiff alone" and is "limited to determining whether he satisfies the other statutory requirements."  *In re Cavanaugh*, 306 F.3d at 732 (stating that the PSLRA "provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case").

1          Here, the Pension Trust claims losses totaling $619,851.84, Mr. Haddock claims

2   losses totaling $314,333.90, and Mr. Studen claims losses totaling $39,518.  (*See* Cappio

3   Decl. ¶ 2, Ex. C; Savett Decl. (Dkt. # 21) ¶ 2, Ex. A; Nivison Decl. (Dkt. # 25) ¶ 2, Ex. C;

4   *see also* Pension Mot. at 4; Haddock Mot. at 5; Studen Mot. at 8.)  The Pension Trust's

5   claimed loss of $619,851.84 is almost double Mr. Haddock's claimed loss and is over 15

6   times greater than Mr. Studen's claimed loss.  The movants do not challenge the accuracy

7   of, or the method used to calculate, the losses alleged.[2]  (*See generally* Pension Resp.;

8   Haddock Not.; Dkt.)  Accordingly, because courts generally treat estimated loss as the

9   most important factor, the court concludes that the Pension Trust has the largest financial

10  interest in this action.  *See Knox*, 136 F. Supp. 3d at 1163; *Barua v. Zillow Grp., Inc.*, No.

11  C21-1551TSZ, 2022 WL 474000, at *2 (W.D. Wash. Feb. 16, 2022) (considering only

12  the estimated loss factor in assessing financial interest where the relative losses alleged

13  were undisputed and the largest estimated loss was far greater than the other movants'

14  estimated losses); (*see also* Haddock Not. at 1 (conceding that the Pension Trust appears

15  to have the largest financial interest)).

16          3.   Federal Rule of Civil Procedure 23(a)'s Requirements

17          Having found that the Pension Trust has the greatest financial interest, the court

18  next considers whether the Pension Trust meets Rule 23(a)'s requirements.  *See In re*

19

20  _____

    [2] The movants appear to have calculated these losses using the last in, first out method.
21  (*See, e.g.*, Savett Decl., Ex. A; Nivison Decl., Ex. C); *Lewis v. CytoDyn, Inc.*, No.
    C21-5190BHS, 2021 WL 3709291, at *3-4 (W.D. Wash. Aug. 19, 2021) (observing that the
    "trend among courts nationwide has been to use LIFO [last in, first out] in calculating competing
22  movants' estimated losses," and explaining that the assumption under LIFO is the first stocks to
    be sold are the stocks most recently purchased).

ORDER - 6

1   *Cavanaugh*, 306 F.3d at 730 & n.5; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); Fed. R. Civ. P

2   23(a).  On a motion to appoint a lead plaintiff, the court focuses solely on Rule 23(a)'s

3   typicality and adequacy requirements.  *Frias*, 835 F. Supp. 2d at 1075 (citing *In re*

4   *Cavanaugh*, 306 F.3d at 730 n.5).  "If the plaintiff with the largest financial stake in the

5   controversy provides information that satisfies these requirements, he becomes the

6   presumptively most adequate plaintiff."  *In re Cavanaugh*, 306 F.3d at 730.  Although the

7   court's typicality and adequacy analysis is far more rigorous at the class certification

8   stage, "[a]t the lead plaintiff stage of the litigation, the party moving for lead plaintiff of

9   the consolidated action need only make a preliminary showing that it satisfies the

10  typicality and adequacy requirements of Rule 23."  *Knox*, 136 F. Supp. 3d at 1165

11  (internal quotation marks omitted) (quoting *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95,

12  102 (S.D.N.Y. 2005)); *see also In re Cavanaugh*, 306 F.3d at 730 (stating that in making

13  its Rule 23 determination, the court "must rely on the presumptive lead plaintiff's

14  complaint and sworn certification; there is no adversary process to test the substance of

15  [these] claims").

16          In the class action context, the test of typicality is "whether other members have

17  the same or similar injury, whether the action is based on conduct which is not unique to

18  the named plaintiffs, and whether other class members have been injured by the same

19  course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992);

20  *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) ("Typicality

21  is achieved where the named plaintiff's claims arise from the same event or course of

22  conduct that gives rise to the claims of the other class members and the claims are based

1  on the same legal theory.").  Here, the Pension Trust, like the other putative class

2  members, purchased Funko shares during the Proposed Class Period, alleges that

3  Defendants' misrepresentations and omissions artificially inflated the stock prices, and

4  suffered economic loss as a result of Defendants' misrepresentations and omissions.  (*See*

5  *generally* Pension Mot. at 1-4; Cappio Decl. ¶ 2, Ex. B ("Pension Trust Cert."); Compl. at

6  7-26.)  Additionally, the Pension Trust bases its claims on the same legal theories as the

7  putative class—i.e., that Defendants' allegedly materially false statements and omissions

8  violated Sections 10(b) and 20(a) of the 1934 Exchange Act.  (*See* Pension Mot. at 1-4;

9  Compl. at 21-31.)  Accordingly, the Pension Trust has made a prima facie showing of

10 typicality.

11       Rule 23's "adequacy" requirement is satisfied if "there are no conflicts between

12 the representative and class interests and the representative's attorneys are qualified,

13 experienced, and generally able to conduct the litigation."  *Knox*, 136 F. Supp. 3d at 1165

14 (quoting *Richardson*, 2007 WL 1129344, at *4); *Staton v. Boeing Co.*, 327 F.3d 938, 957

15 (9th Cir. 2003) (stating that the proposed lead plaintiff and their counsel must be willing

16 to "prosecute the action vigorously on behalf of the class").  Here, there are no apparent

17 conflicts of interest between the Pension Trust and other putative class members.  (*See,*

18 *e.g.*, Pension Trust Cert. (stating that the Pension Trust "will not accept any payment for

19 serving as a representative party beyond the [lead p]laintiff's pro-rata share of any

20 recovery, except such reasonable costs and expenses" directly relating to the

21 representation); Pension Mot. at 4-5.)  Additionally, the Pension Trust certifies under

22 penalty of perjury that it is willing to serve as a representative of the putative class and

1  desires to achieve the best possible result in prosecuting the case.  (Pension Trust Cert.)

2  In light of the Pension Trust's certification (*see id.*), experience serving as a lead plaintiff

3  in securities fraud class actions (Pension Mot. at 4-5; Reply at 3-4), status as an

4  institutional investor (Pension Mot. at 4-5; Reply at 3-4), and significant financial interest

5  in this case (*see supra* § III.A.2), the court concludes that the Pension Trust will be a

6  vigorous advocate on the putative class's behalf.  *See, e.g.*, *Tanne v. Autobytel, Inc.*, 226

7  F.R.D. 659, 668 (C.D. Cal. 2005) (stating that the movant was "an 'adequate' plaintiff

8  because he has suffered the greatest financial loss, ensuring vigorous advocacy").

9  Finally, as discussed below, the Pension Trust has selected experienced and qualified law

10  firms to litigate this action on behalf of the putative class.  (*See infra* § III.B.)  For these

11  reasons, the Pension Trust has made a prima facie showing that it satisfies Rule 23(a)'s

12  adequacy requirement.

13      Because the Pension Trust has the largest financial interest in this litigation and

14  makes a prima facie showing of adequacy and typicality, the court concludes that the

15  Pension Trust is the "presumptively most adequate plaintiff."  *In re Cavanaugh*, 306 F.3d

16  at 730.  Neither Mr. Studen nor Mr. Haddock attempt to rebut the Pension Trust's status

17  as the presumptively most adequate plaintiff.  (*See* Haddock Not.; Dkt.)  Accordingly, the

18  court appoints the Pension Trust as lead plaintiff in this matter.

19  **B.      Approval of the Lead Plaintiff's Choice of Counsel**

20      The PSLRA provides that the most adequate plaintiff "shall, subject to the

21  approval of the court, select and retain counsel to represent the class."  15 U.S.C.

22  § 78u-4(a)(3)(B)(v).  If the lead plaintiff makes "a reasonable choice of counsel, the

1    district court should generally defer to that choice." *Cohen v. U.S. Dist. Ct. for N. Dist.*

2    *of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009).  A court may reject the lead plaintiff's choice

3    of counsel, but the court does not have "the authority to select lead counsel of its own

4    choosing." *Id.* at 709.  The court therefore has only "the limited power to accept or reject

5    the lead plaintiff's selection." *Id.*

6          The Pension Trust has selected Robbins Geller Rudman & Dowd LLP ("Robbins

7    Geller") as lead counsel and Keller Rohrback, L.L.P. ("Keller Rohrback") as liaison

8    counsel.  (Pension Mot. at 5-7.)  According to the information submitted by the Pension

9    Trust and provided on the firms' websites, Robbins Geller and Keller Rohrback have

10   served as lead counsel in dozens of complex class action securities cases and have

11   achieved numerous settlements on behalf of the securities classes they have represented.

12   (*See* Pension Mot. at 5-6 & n.2 (collecting cases).)  Considering the firms' extensive

13   experience prosecuting complex securities class actions similar to this one, the court

14   concludes that Robbins Geller and Keller Rohrback are well-qualified to serve as lead

15   and liaison counsel.  The court also notes that no party objected to the appointment of

16   Robbins Geller and Keller Rohrback as lead and liaison counsel.  (*See generally* Haddock

17   Not.; Dkt.)  Accordingly, the court approves the Pension Trust's selection of Robbins

18   Geller as lead counsel and Keller Rohrback as liaison counsel.

19                          **IV.    CONCLUSION**

20         For the foregoing reasons, the court GRANTS the Pension Trust's motion to

21   appoint lead plaintiff and counsel (Dkt. # 22), DENIES Mr. Studen's motion to appoint

22   lead plaintiff and counsel (Dkt. # 20), and DENIES Mr. Haddock's motion to appoint

1  lead plaintiff and counsel (Dkt. # 24).  The court APPOINTS the Pension Trust as lead

2  plaintiff, Robbins Geller as lead counsel, and Keller Rohrback as liaison counsel.  In

3  accordance with the court's June 27, 2023 order (6/27/23 Order (Dkt. # 5)), the court

4  ORDERS the parties to file a joint status report that proposes a schedule for the filing of

5  an amended complaint, any answer to the amended complaint or motion to dismiss the

6  same, and any motion for class certification by no later than **August 31, 2023.**

7         Dated this 17th day of August, 2023.

JAMES L. ROBART
United States District Judge

ORDER - 11